GUY A. MYERS v. A. B. C. KIRK, A. B. C. KIRK BUS LINE, ROYAL BLUE TRANSPORTATION COMPANY, Inc., L. F. BARNARD, AND PIEDMONT STAGE LINE, Inc.

(Filed 8 December, 1926.)

1. **Carriers—Automobiles—Bus Lines—Combinations—Contracts—Negligence—Damages.**

Where there is sufficient legal evidence that several auto-bus lines operated between certain cities and towns, for the transportation of passengers for hire interchangeably, or the drivers for one line would take the passengers who had bought tickets over another of them as if sold over its own line, a ticket sold over one of these lines being equally acceptable by the other, either of the combined lines is responsible in damages for a personal injury negligently inflicted on a passenger.

2. **Negligence—Ownership—Evidence—Questions for Jury — Passengers —Damages.**

Evidence held sufficient for the jury in this case, that the defendants were mutually and interchangeably engaged under a contract or agreement to transport passengers between two cities, that the driver of the automobile whose negligence caused the injury wore a uniform bearing the appealing defendant's insignia, honored tickets bought for transportation over the other alleged combined lines, and the car was registered as that of such defendant in the department of revenue, the application for certificate so designated it, the appealing defendant re-received the car from the mechanic repaired it after the injury, and the president of the appealing defendant corporation acknowledged the ownership of the car by his corporation, etc.

3. Evidence—Questions for Jury—Issues.

Where the evidence is conflicting in an action to recover damages from a passenger auto-bus line for a personal injury alleged to have been negligently inflicted on the plaintiff while a passenger thereon, an issue is raised for the jury to determine.

4. Carriers—Evidence—Automobiles — Receipts — Appeal and Error — Harmless Error.

Where a passenger is negligently injured by the negligence of the defendant while riding on its car, and in his action to recover damages the question arises as to whether the defendant corporation was regularly engaged in transporting passengers for hire, the amount of money the defendant received for such services and the number of cars it thus had in use is competent evidence thereof, though not for the purpose of showing its commercial rating. *Held, further,* under the facts of this case the admission of such evidence would not constitute reversible error.

5. Evidence—Attorney and Client.

Representations of an attorney that he was acting for the defendant corporation in settling claims against it, made in the presence of defendant's president, and not denied by him, is sufficient evidence thereof to be submitted to the jury.

CIVIL ACTION, before *Harding, J.,* at March Term, 1926, of MECK-LENBURG.

The plaintiff sued five defendants, to wit, A. B. C. Kirk, A. B. C. Kirk Bus Line, Royal Blue Transportation Co., Inc., L. F. Barnard and Piedmont Stage Line, for personal injury sustained by him on 6 January, 1925. Plaintiff alleged that the five defendants, at the time of his injury, and prior thereto, were engaged in the business of carrying passengers for hire from Charlotte to Greensboro by virtue of some private arrangement or mutual contractual relationship, and, as a result thereof, were acting together and sharing in the profits of transporting passengers between said points; that on 6 January, 1925, the plaintiff purchased a ticket in the city of Charlotte, marked "Kirk Bus Line," entitling him to one continuous passage on said date from Charlotte to Greensboro; that thereafter plaintiff became a passenger in a car operated by the defendants, and by reason of negligence and carelessness of the driver the said car was negligently operated and driven into a tree standing on the side of the highway, with such violence as to "practically. tear down and uproot said tree," and as a result thereof plaintiff sustained five fractures of his left knee and knee cap, and other lacerations, cuts, wounds and bruises, resulting in serious permanent injury.

Each of the defendants filed answers denying liability. The defendant, Royal Blue Transportation Company, filed an answer denying liability. There was judgment against the defendants, A. B. C. Kirk,

trading as A. B. C. Kirk Bus Line, Royal Blue Transportation Co., and Piedmont Stage Line. The Royal Blue Transportation Co. appealed.

The evidence tended to show that the plaintiff bought a ticket from the Kirk Bus Line in the New Central Hotel at Charlotte, from E. H. Griffin, and boarded a bus at the corner of Eighth and Tryon streets in accordance with an arrangement made by Griffin. Griffin was stationed in the New Central Hotel at Charlotte and testified without objection: "I was in the employment of all of these bus lines for about fifteen months. During the time of my employment with the parties named I gave passengers information and directions and put them on the first bus that went out—it did not make any difference whose they were. I did not hold the passengers for any particular bus. The different bus lines named, exchanged and honored each other's tickets. The bus drivers would turn the tickets over to the bus owners. I know that L. F. Barnard and the Royal Blue Transportation Company were operating a car or cars on 6 January, 1925, from Charlotte to Greensboro." The witness further testified that the defendants, including Royal Blue Transportation Co., paid him for his services $2.60 per bus per month.

L. A. Love testified for the plaintiff: "That on 6 January, 1925, the Royal Blue Transportation Co. was operating cars or busses or conveyances between Charlotte and Greensboro, and that on said date said defendant operated a seven-passenger Studebaker car with a Rex enclosure, and that Griffin was serving the defendants by soliciting trade, calling busses and giving information in general."

Plaintiff testified that on the date of his injury he bought a ticket from Griffin, and at the time of purchasing the ticket, Griffin stated to him that it would be all right for him to go home and wait on the corner of Eighth and Tyron streets, and that he would send the Kirk Line Bus to that point. When the driver of the bus drove to that point he opened the door of the car—he was driving this seven-passenger Studebaker car—and he says to me, "Are you the man that the Kirk Bus Line Co. sent me to take to Greensboro?" I says, "I am." And he opened the door and says, "All right, get in." At that time I noticed he had on this uniform I just spoke of—that is the uniform of the Royal Blue Transportation Co.—and my ticket was on the Kirk Bus Line Co. And the driver said, "Kirk Bus Line Co. sent me after you— we work together; we handle each other's passengers. Get in." I got in . . . and presented my ticket, and he says, "I will take it up at the destination."

*T. L. Kirkpatrick and H. L. Taylor for plaintiff.*

*Stewart, McRae & Bobbitt for defendant, Royal Blue Transportation Co.*

BROGDEN, J.  There was competent evidence of the negligent operation of the car, and also of serious and permanent injuries sustained by plaintiff.  There was evidence to the effect that on 1 January, 1926, prior to the injury, the defendant, Royal Blue Transportation Co., had sold this car to the Piedmont Stage Line, Inc., and that on the date of the injury the car was owned and operated by the Piedmont Stage Line, Inc., and not by the defendant, Royal Blue Transportation Co.  The whole case resolves itself, therefore, into the question as to whether or not there was any evidence that the Royal Blue Transportation Co. owned and was operating the car at the time of plaintiff's injury.

The record discloses the following indicia of ownership and operation of said car:

1. The driver of the car causing plaintiff's injury wore a uniform bearing the insignia "Royal Blue Transportation Co."

2. The defendants honored each other's tickets and placed passengers on the first bus leaving Charlotte, regardless of the ticket held.

3. The car in which the plaintiff was riding was registered in the Department of Revenue and was operating under a license issued to the defendant, Royal Blue Transportation Co., said license having been issued on 30 June, 1924.

4. The application for the registration of said car for title certificate designated the Royal Blue Transportation Co. as the owner of said car.

5. The mechanic in Salisbury, who pulled the wrecked car in and repaired it, testified, without objection, that he repaired the car and sent the bill to the Royal Blue Transportation Co., and, further, that "Royal Blue Transportation Company responded to that notice by coming after the car."

6. L. F. Barnard, president of the Royal Blue Transportation Co., told Mr. Ervin, an attorney of Charlotte that the car causing the injury was the property of the Royal Blue Transportation Co. at the time of the wreck.  There was no objection to the testimony of this witness. There was other testimony to the same effect.

We are of the opinion that these facts and circumstances constituted sufficient evidence of ownership and operation of said car by the defendant, Royal Blue Transportation Co., to be submitted to the jury. *Freeman v. Dalton,* 183 N. C., 538; *Hensley v. Helvenston,* 189 N. C., 636.

The evidence, it is true, was conflicting upon this phase of the case, but conflicting testimony affects only the credibility of the witness or witnesses, and does not warrant the withdrawal of the case from the jury.  *Shell v. Roseman,* 155 N. C., 90; *Christman v. Hilliard,* 167 N. C., 5; *Shaw v. Handle Co.,* 188 N. C., 236; *In re Fuller,* 189 N. C., 512; *Smith v. Coach Line,* 191 N. C., 589.

The defendant excepts to evidence as to the amount of money collected by the defendant, Royal Blue Transportation Co., and also as to the number of cars in use. This evidence was competent to show that the defendant was operating as a carrier of passengers on the date of plaintiff's injury. If the evidence had been elicited for the purpose of showing the commercial rating of defendant, it would have been irrelevant; but, even so, it would not constitute reversible error under the facts and circumstances presented in this record. *Lumber Co. v. Lumber Co.,* 176 N. C., 504.

Exceptions 70 and 71 relate to the testimony of witness Ervin, who testified that L. B. Vreeland was attorney for the Royal Blue Transportation Co. The witness said: "The only way I can answer that question is by stating what Mr. Vreeland did as attorney for the party to this action. Mr. Vreeland, as attorney for the Royal Blue Transportation Co., representing himself as attorney for the Royal Blue Transportation Co., signed an agreement that all notices that he had given or might be given as to taking of the deposition had been waived by the Royal Blue Transportation Co." The witness was an attorney and was negotiating in the interest of O'Henry Moore, who was a passenger in the car with the plaintiff, and was also injured in the wreck. Barnard, president of the defendant, was present at the conversation.

There were facts and circumstances which the jury might well have found reasonably induced a careful and prudent person to suppose that the attorney was authorized to act for his client in the matter. *Bank v. Hay,* 143 N. C., 326; *Trollinger v. Fleer,* 157 N. C., 81.

The case in its final analysis presents only issues of fact, and these issues, under a proper charge, have been resolved against the defendant, and the judgment is upheld.

No error.